# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

ELLIS LEATON,

      Plaintiff,

v.                                            CV 09-0382 WPL/CG

NAVAJO REFINERY,

      Defendant.

## MEMORANDUM OPINION AND ORDER

Ellis Leaton brought a lawsuit against Navajo Refining Company, LLC ("Navajo Refinery") claiming age discrimination and retaliation for statutorily protected conduct. (Doc. 1.) Navajo Refinery's Motion for Summary Judgment seeks summary judgment on both claims brought by Leaton. (Doc. 71.) Considering the evidence in the light most favorable to Leaton, *R.W. Beck, Inc. v. E3 Consulting, LLC*, 577 F.3d 1133, 1142 (10th Cir. 2009) (quotation omitted), because this federal case is precluded by a prior state court judgment, I will grant Navajo Refinery's Motion for Summary Judgment. Navajo Refinery is also entitled to judgment as a matter of law on the alternative ground that there is no genuine issue of material fact as to the reason for Leaton's termination.

## FACTUAL AND PROCEDURAL BACKGROUND

As noted in a previous order, this Court is the third forum in which Leaton has sought to redress the termination of his employment with Navajo Refinery. For that reason, the procedural

history is somewhat complex.[1]

Navajo Refinery operates a crude oil refinery in Artesia, New Mexico. (Doc. 71 at 2; Doc. 71 Ex. A ¶¶ 2-3.) There, crude oil is refined into flammable products under conditions of high heat and pressure. (*Id.* at ¶ 3.) Operators are responsible for running each unit of the refinery. (Doc. 71 at 3; Doc. 71 Ex. A at ¶ 4.) The operators are members of the International Union of Operating Engineers ("the union"), with whom Navajo Refinery has a collective bargaining agreement ("CBA"). (Doc. 71 at 3; *see also* Doc. 18 Ex. A.) Operators are promoted through various levels at Navajo Refinery in compliance with the seniority provisions of the CBA.[2] (Doc. 18 Ex. A at 2-4.)

Leaton, born September 28, 1961 (Doc. 74 at 2), was employed by Navajo Refinery from August of 1998 through November of 2007. (Doc. 71 at 3; Doc. 71 Ex. B at ¶ 3.) Leaton began his employment in an entry-level position, and he progressed through several steps to eventually become a board operator in November of 2006. (Doc. 71 at 3; Doc. 71 Ex. B at ¶ 3.) The central responsibility of board operators is to monitor the conditions of the refinery's vessels through computers at the control board.[3] (Doc. 71 at 3; Doc. 71 Ex. H at 45:9-16.) When necessary, board operators are responsible for making adjustments to the vessels, either via computer or by providing feedback to outside operators for manual adjustments. (Doc. 71 at 3; Doc. 71 Ex. A at ¶ 4.) If no adjustment is made and pressure becomes too great in the vessel, a safety relief valve will

---

[1] The facts that follow are not in dispute, unless otherwise indicated.

[2] The CBA provides, "Seniority (plant, department, or classification) shall govern all advancement, transfers, and reductions provided the senior eligible employee is capable and has qualifications for fulfillment of duties; either immediately or within a reasonable period of time." (Doc. 18 Ex. A at 2.) Furthermore, "A vacancy in any classification shall be filled by plant seniority, except that the employee who has accumulated the most seniority in that classification by previous temporary or permanent bid shall be given preference . . . ." (*Id.* at 3.)

[3] The terms "vessels" and "towers" refer to the containers in which the refining processes take place.

automatically open and emit a flare. (Doc. 71 at 3; Doc. 71 Ex. A at ¶ 5.) A flare indicates a hazardous condition; when one occurs, Navajo Refinery must prepare an environmental report and submit it to a regulatory agency. (Doc. 71 at 3; Doc. 71 Ex. A at ¶ 5.) Board operators are also responsible for a variety of other tasks, including obtaining tank gauge numbers by telephone and logging them.  (Doc. 71 Ex. H at 75:6-16; Doc. 71 Ex. I at 158:1-20.)

Leaton was employed by Navajo Refinery for nine years, and during that time, he was diagnosed with diabetes. (Doc. 1 at ¶ 10.) Leaton asserts that diabetes impacted his ability to focus, concentrate, be decisive, communicate, walk, and sleep. (*Id.*; Doc. 71 Ex. D at 68:7-72:23.) Within a few years of his diagnosis, Leaton began to receive written reprimands and counseling due to alleged rule violations. (*See* Doc. 71 Ex. C.) On August 27, 2004, Navajo Refinery sent Leaton a letter describing incidents that had occurred over the previous year and offering him training, medical evaluation, or other services because of asserted concern about Leaton's ability to perform his job. (*Id.*) Subsequently, Navajo Refinery allowed Leaton to take three months of medical leave for treatment of his diabetes. (Doc. 26 at 2.) After Leaton returned to work, in April of 2006, Navajo Refinery sent him a letter indicating that the company's doctor believed that he posed a safety risk because he was noncompliant with his diabetes stabilization regimen. (Doc. 71 Ex. E.) The letter stated that control of the diabetic condition was an ongoing job requirement and that the letter constituted Leaton's "final warning for compliance." (*Id.*)

The facts surrounding the most recent set of complaints purportedly regarding Leaton's work performance are somewhat disputed. Navajo Refinery contends that these problems began in late 2006. (Doc. 76 at 1.) During the month of December, then-Assistant Operations Manager Robert

Boans[4] received complaints about Leaton sleeping on the job on two separate occasions. (Doc. 76 at 1; Doc. 76 Ex. A.1-A.4.) Leaton did not contest that he was found asleep. (Doc. 76 Ex. A at ¶ 4, Ex. B at 122:12.) One complaint was submitted by Ricky Garcia on December 27, 2006. (Doc. 76 Ex. A.1.) Garcia stated that, while reading an incident report on October 31, 2006, he noticed that Leaton was asleep. (*Id.*) Three additional complaints were submitted by a co-worker, Stephen Pinson, an immediate supervisor, Terry Hill, and a shift foreman, David Hammond, on December 22, 2006. (Doc. 76 Exs. A.2, A.3 & A.4.) Hill noticed Leaton asleep while operating the control board on December 21, 2006, reported Leaton's state to Hammond, and awakened Leaton. (*Id.*) As a result of these complaints, Boans prepared a counseling notice on December 28, 2006, emphasizing the significant safety risk posed by sleeping on the job and recommending that Leaton receive a warning. (Doc. 76 at C.)

Leaton contends that the most recent set of problems began in early 2007 and resulted from him reporting to the union that his immediate supervisor, then-A-operator Ismael Perez,[5] was sleeping on the job and that Boans took no action. (Doc. 74 at 2-3.) Both Perez and Boans deny that Perez was asleep. (Doc. 76 at 2; Doc. 76 Ex. D.) Leaton alleges that Perez was sitting next to him on December 30, 2006 while Leaton ran the control board (Doc. 76 Ex. F at 82:14-15), and that Boans entered the room, found Perez asleep, and shook the chair to awaken him. (Doc. 76 Ex. B at 122:13-17.) Leaton felt that Perez was treated unequally because he, unlike Leaton, did not receive a written warning. (*Id.*) Prior to that time, Leaton and Perez had a good relationship. (Doc. 74 at 3; Doc. 71 Ex. D at 122:4-13.) Leaton asserts that his problems at work constituted ongoing harassment

---

[4] Boans is now the Operations Superintendent for Navajo Refinery. (Doc. 71 Ex. A at ¶ 2.)

[5] Perez was promoted in the summer of 2007 to the non-union managerial position of division foreman at Navajo Refinery. (Doc. 71 Ex. D at 122:15-19.)

by Perez and Boans and only began after he made the report to the union. (Doc. 74 at 3.)

The parties do not dispute that Leaton received a counseling notice on February 28, 2007 listing a number of complaints and issues. (Doc. 71 Ex. G.) The notice listed six separate incidents that occurred between January 11, 2007 and February 11, 2007, including a vessel left with a high level for over an hour, an open valve, failure to assist an employee being trained to work as a board operator, and another incident of sleeping while operating the control board.[6] (*Id.*) All six incidents were considered violations of work rules. (*Id.*) The notice indicated that it, along with Leaton's comments, would be presented to the Refinery Manager. (*Id.*) Leaton provided no comments. (*Id.*)

Leaton now argues that all listed issues aside from the sleeping incident evidence discrimination against him because they were neither his fault nor his responsibility and because they were reported by Perez. (*See* Doc. 75 Ex. A at 156:19-23.) Leaton states that he made no correction to the vessel with the high level because Boans told him that there was a problem with the vessel that he could do nothing to fix, though he admits that Perez was able to take over the control board and alleviate the high level. (Doc. 75 Ex. A at 147.1-25, 148.1-15.) With regard to the open valve, Leaton asserts that he did not have the authority to do what was necessary to close the valve; he instead instructed the operator as to what action to take. (Doc. 75 Ex. A at 154:15-155:7, 156:5-11.) He asserts that each problem aside from the sleeping incident, was reported in retaliation for Leaton's report to the union. (Doc. 71 Ex. H at 131:13-132:17.)

Yet another incident of Leaton sleeping on the job occurred approximately ten days after the February 11 incident, on February 20 or 21, 2007. (Doc. 76 Ex. A.6.) Sam Lewis, Leaton's co-

---

[6] The incident of sleeping while at the control board occurred on February 11, 2011 and was reported by Hugo Aguirre, a lower-level operator. (Doc. 76 Ex. A.5.) Leaton asserts that, instead of sleeping, he may "have been losing consciousness," but he does admit that he was not fully conscious. (Doc. 76 Ex. G at 165:3-4.)

worker, found Leaton asleep at the control board. (*Id.*) Lewis reported that he opened the door to the control room and found Leaton breathing loudly and sitting with his head down and eyes shut. (*Id.*)

As a result of the February 2007 counseling notice, Navajo Refinery placed Leaton on a ten-day suspension in March of 2007. (Doc. 76 Ex. H.) The letter suspending Leaton indicated that the disciplinary action constituted Navajo Refinery's "Last and Final Warning" for Leaton to correct his performance issues. (Doc. 76 Ex. H at 1 (emphasis omitted)). It further warned that "[a]ny further performance problems or incidences of sleeping on the job will result in immediate termination of your employment." (*Id.*)

Leaton had no further problems reported for several months. For a portion of that time, Leaton was on medical leave after undergoing gastric bypass surgery. (Doc. 26 at 3.) Following his return, Leaton states that his problems with Perez and Boans continued. Three incidents occurred in October of 2007 while Leaton was in charge of the control board, each of which resulted in a tower flaring.

On October 8, 2007, a tower controlled by the board that Leaton was monitoring accumulated too much pressure and flared. (Doc. 71 Ex. A at ¶ 6.) The diagram of the tower's pressure shows that the pressure was increasing and decreasing rapidly over a large range for a period of hours. (Doc. 75 Ex. A.2.) On October 20, 2007, the same tower, again under the supervision of Leaton, accumulated too much pressure and flared. (Doc. 75 Ex. A at ¶ 8.) An alarm sounded for a period of minutes prior to the flare. (*Id.*) Leaton did not make an adjustment to lower the pressure (*id.*), though he did press a button to acknowledge the alarm approximately two minutes after it began. (Doc. 71 Ex. H at 32:22-33:19.) Four days later, a different tower flared while Leaton was at the control board. (Doc. 71 Ex. A at ¶ 9.) Leaton received an alarm approximately forty-five minutes prior to the flare. (*Id.*) He did not report that flare to his supervisor, violating Navajo

Refinery's policy and procedure. (*Id.*)

Leaton contends that he was not responsible for these three incidents. He claims that the outside operators who actually caused the pressure change to one vessel were not written up (Doc. 74 at 3), but he admits that he did not instruct the outside operators to alter their actions. (Doc. 71 Ex. H at 45:9-46:25.) Leaton asserts that it was not uncommon for the vessel that flared twice to flare, and he believes that the vessel flared once before on October 20, 2007 while another operator was in charge of the control board. (Doc. 74 at 4.) During the October 20 incident, while three alarms were sounding to warn of the rising pressure, Leaton was on the telephone logging tank gauge numbers. (Doc. 71 Ex. H at 75:6-16; Doc. 71 Ex. I at 158:1-20.) Finally, with regard to one instance, Leaton contends that he was specifically told not to make any modifications to the vessel at issue by the operator previously in charge of the board, the supervising A-operator, and the written instructions in the log book. (Doc. 71 Ex. H at 80:21-81:22; Doc. 74 at 4.)

At some point prior to his termination, Leaton alleges that he filed two or three EthicsPoint[7] complaints with Navajo Refinery asserting disparate treatment. (Doc. 71 Ex. H at 118:2-11; Doc. 74 at 2.) Leaton believes that he met with individuals regarding the EthicsPoint complaints in early March and early November of 2007. (Doc. 71 Ex. H at 119:3-21.) He also filed at least one union grievance, which he states was resolved through mediation in May of 2007. (*Id.* at 118:21-119:2, 119:22-25.)

Leaton was terminated on November 30, 2007. (Doc. 71 Ex. J.) The termination letter states, "It is the result of your on going poor work performance and your violations to our safety and environmental policy statements that the Company is terminating your employment." (*Id.*) Both

---

[7] EthicsPoint is Navajo Refinery's whistleblower reporting system. (Doc. 71 at 17.)

Boans and Navajo Refinery's Manager of Human Resources have stated in affidavits that Leaton's work performance and safety violations created serious safety concerns. (Doc. 71 Ex. B at ¶ 4; Doc. 76 Ex. A at ¶ 5.)

Leaton's position was filled by David Bethke, a younger man, who was next in line for a permanent board operator position based on the seniority provisions of the CBA. (Doc. 71 at 5; Doc. 71 Ex. B at ¶ 6.)

On November 12, 2007, Leaton filed a charge with the Equal Employment Opportunity Commission ("EEOC") and the New Mexico Human Rights Division ("NMHRD") alleging that he was discriminated against on the basis of his national origin, disability and religion ("Charge 1"). (Doc. 71 Ex. K.) Leaton also proceeded with his claims against Navajo Refinery by filing a grievance pursuant to the CBA on December 6, 2007. After the grievance was denied on December 10, 2007, Leaton appealed, which moved the grievance into arbitration. (Doc. 71 at 8.)

While Leaton's appeal with the Union was pending, he filed a lawsuit in New Mexico state court. (Doc. 18 Ex. E.) In that complaint, Leaton raised three claims, all arising from his employment with and ultimate termination from Navajo Refinery. (*Id.*) First, he alleged that he was subjected to discrimination based on his disability, religion and national origin in violation of the New Mexico Human Rights Act ("NMHRA"), Title VII of the Civil Rights Act of 1964 ("Title VII") and the Americans with Disabilities Act ("ADA"). (*Id.* at 2.) Specifically, he sought to prove that he was disciplined for sleeping on the job while a co-worker who he and his supervisor observed sleeping on the job was not disciplined. (*Id.* at 3.) He alleged that he again witnessed and reported two co-workers sleeping on the job and that they were not disciplined. (*Id.* at 3.) He further alleged that he was disciplined because two other operators, who were not disciplined, left a pressure gauge off. (*Id.* at 3.) Finally, he alleged that he was terminated merely ten days after filing Charge

1 with the EEOC. (*Id.* at 4.).

On June 24, 2008, after commencing his state lawsuit, Leaton filed a second charge with the EEOC and NMHRD alleging that his termination was retaliatory and was related to his age ("Charge 2"). (Doc. 71 Ex. L.) With regard to retaliation, Leaton stated in Charge 2 that he believed he was terminated for filing Charge 1. (*Id.*) Leaton received a Notice of Right to Sue on these two claims on January 20, 2009. (Doc. 1 Ex. A.)

Leaton initiated this federal lawsuit on April 20, 2009, during the pendency of both the state court case and the arbitration. (Doc. 1.) In his federal complaint, he alleges that he was unlawfully discriminated against by Navajo Refinery on the basis of his age in violation of the Age Discrimination in Employment Act ("ADEA"). (*Id.* at 5-6.) He further claims that he was unlawfully retaliated against for statutorily protected conduct in violation of both the New Mexico Human Rights Act and Title VII. (*Id.* at 6.) Leaton relies on the same factual allegations included in his state complaint as the bases for his federal complaint.

The arbitrator issued a decision on December 2, 2009 denying Leaton's termination grievance. (Doc. 18 Ex. D.) This Court has previously detailed the findings of the arbitrator in a Memorandum Opinion and Order ("MOO"), filed on September 22, 2010, and I adopt that discussion. (*See* Doc. 26 at 5-6.) In that MOO, the Court considered the impact of the arbitrator's decision on the pending federal lawsuit and concluded that the arbitrator's findings and decision were neither preclusive of this lawsuit nor binding on this Court. (*Id.* at 12-14.)

Unlike this Court, the state court concluded that the decision of the arbitrator did bind the parties. (Doc. 71 Ex. M.) Leaton's state court action concluded on September 24, 2010 with the entry of summary judgment in favor of Navajo Refinery. (Doc. 71 Ex. O.) The state court also issued Findings of Fact and Conclusions of Law, adopting the Requested Findings of Fact and

Conclusions of Law from Navajo Refinery. (Doc. 71 Ex. N at 1.) In the state court's conclusions of law, the court determined that the resolution of Leaton's claims through arbitration precluded subsequent judicial review of his statutory discrimination claims and that collateral estoppel also barred his state court claims. (*Id.* at 3-9.) It appears that Leaton did not appeal the state court judgment. (Doc. 71 at 8.)

SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where the pleadings, discovery materials, and affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986). The court must view all "evidence and draw all reasonable inferences therefrom in the light most favorable to the party opposing summary judgment." *Mathews v. Denver Newspaper Agency LLP*, --- F.3d ----, No. 09-1233, 2011 WL 1901341 at *3 (10th Cir. May 17, 2011) (quoting *Lewis v. Circuit City Stores, Inc.*, 500 F.3d 1140, 1146 (10th Cir. 2007)). In ruling on a summary judgment motion, the court may neither make credibility determinations nor weigh the evidence. *Gossett v. Oklahoma*, 245 F.3d 1172, 1175 (10th Cir. 2001) (quotation omitted).

The party that moves for summary judgment bears the initial burden of showing "that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. If this burden is met, the nonmoving party must identify specific facts that show the existence of a genuine issue of material fact requiring a trial on the merits. *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991). A fact is "material" if, under the governing law, it could have an effect on the outcome of the lawsuit, and the dispute is "genuine" if a rational jury could find in favor of the nonmoving party on the evidence presented. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (citations omitted).

10

RES JUDICATA

Navajo Refinery first argues that, though the Court previously ruled that Leaton's claims were not precluded due to the dismissal of the claims brought in arbitration (Doc. 26), this federal lawsuit is precluded by the state court's dismissal of Leaton's case. (Doc. 71 at 9.) It contends that Leaton was required to join his age discrimination and retaliation claims with his state court action and that, because he did not, this case is barred pursuant to the *res judicata* doctrine. (*Id.*) Navajo Refinery admits that Leaton did not receive notice of his right to sue regarding age discrimination and retaliation until after the state court case was already pending; however, it asserts that the state court case remained pending when Leaton received the notice. (*Id.* at 9-10.) Navajo Refinery further contends that the state court's determination that Leaton's statutory claims were barred has preclusive effect, which I must recognize due to the Full Faith and Credit Act, 28 U.S.C. § 1738. (*Id.* at 12-13.)  Finally, it urges that the state court's Findings of Fact and Conclusions of Law are entitled to preclusive effect. (*Id.* at 13-14.)

The principle of *res judicata*, or claim preclusion, prevents a party from litigating a claim that was or could have been raised in a previous action. *MACTEC, Inc. v. Gorelick*, 427 F.3d 821, 831 (10th Cir. 2005) (citing *Satsky v. Paramount Commc'ns, Inc.*, 7 F.3d 1464, 1467 (10th Cir. 1993)); *see also Stone v. Dep't of Aviation*, 453 F.3d 1271, 1275 (10th Cir. 2006) (quoting RESTATEMENT (SECOND) OF JUDGMENTS § 6 (1982)) ("The principle underlying the rule of claim preclusion is that a party who once has had a chance to litigate a claim before an appropriate tribunal usually ought not have another chance to do so."). The primary purpose of claim preclusion is to force a plaintiff to explore all facts, develop all legal theories, and demand all available remedies based on a single transaction or series of transactions in her first lawsuit. *Stone*, 453 F.3d at 1279 (quotation omitted). If *res judicata* applies, the first judgment conclusively bars the parties and their

privies from raising in a subsequent lawsuit every issue that "either was or properly could have been litigated in the previous case." *Silva v. State*, 745 P.2d 380, 382 (N.M. 1987) (quotation omitted).

Where a state court judgment is at issue, the federal court is required to give the judgment "the same preclusive effect as would be given that judgment under the law of the State in which [it] was rendered." *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984); *see also Kremer v. Chem. Constr. Corp.*, 456 U.S. 461, 481 (1982); *Strickland v. City of Albuquerque*, 130 F.3d 1408, 1411 (10th Cir. 1997). Thus, the federal court must look to the state's law to determine the preclusive effect of the previous judgment.[8] Here, the applicable law is that of the State of New Mexico. Under New Mexico law, a claim will be precluded where (1) the parties are the same; (2) the parties are acting in the same capacity or character; (3) the subject matter is the same; (4) the cause of action is the same; and (5) there was a final decision on the merits in the first suit. *Strickland*, 130 F.3d at 1411 (citation omitted); *Kirby v. Guardian Life Ins. Co. of Am.*, 231 P.3d 87, 105 (N.M. 2010) (quoting *City of Sunland Park v. Macias*, 75 P.3d 816, 821 (N.M. 2003)). Furthermore, New Mexico law requires that the party seeking preclusion bear the burden of establishing that *res judicata* applies. *Anaya v. City of Albuquerque*, 924 P.2d 735, 737 (N.M. Ct. App. 1996) (citation omitted).

I can summarily dispose of the first three elements. The parties are clearly the same and are acting in the same capacity, with Leaton as the Plaintiff and Navajo Refinery as the Defendant in both actions. The subject matter of both the state action and this action are the same because, in both, Leaton has requested redress for the same allegedly wrongful termination. *See Chavez v. City*

---

[8] Both parties rely on federal law in discussing the issue of preclusion. However, New Mexico and the federal courts do not diverge on the test for preclusion and both find that the Restatement of Judgments is persuasive. *Ford v. N.M. Dep't of Pub. Safety*, 891 P.2d 546, 554 (N.M. Ct. App. 1994) (citations omitted).

*of Albuquerque*, 952 P.2d 474, 479 (N.M. Ct. App. 1997) (citing *Ford v. N.M. Dep't of Pub. Safety*, 891 P.2d 546, 555 (N.M. Ct. App. 1994)). Furthermore, there is no doubt that, by granting summary judgment for the Defendants, the state court's judgment was final.

The remainder of the elements, however, are contested. Leaton contends that the causes of action are different and that the first judgment was not on the merits. (Doc. 74 at 1.) Furthermore, he argues that the state court's decision to give preclusive effect to the arbitrator's decision would be incorrect under federal law and, as a result, the state court judgment should not preclude his federal lawsuit. (*Id.* at 7-8.)

For preclusion purposes, New Mexico has adopted a transactional approach to determine whether the causes of action are the same. *Roybal v. Lujan de la Fuente*, 218 P.3d 879, 884 (N.M. Ct. App. 2009). Under this approach, the court is required to consider three factors: "(1) the relatedness of the facts in time, space, origin, or motivation; (2) whether, taken together, the facts form a convenient unit for trial purposes; and (3) whether the treatment of the facts as a single unit conforms to the parties' expectations or business understanding or usage." *Id.* (quoting *Bank of Santa Fe v. Marcy Plaza Assocs.*, 40 P.3d 442, 446 (N.M. Ct. App. 2001)). However, the focus in this inquiry is on the facts alleged; the legal theories raised and the relief sought are irrelevant. *Moffat v. Branch*, 118 P.3d 732, 738 (N.M. Ct. App. 2005). Therefore, the fact that Leaton seeks relief under different legal theories in this federal action than those pursued in the state action is irrelevant to this inquiry. *See Strickland*, 130 F.3d at 1413.

In both lawsuits, Leaton complains about his treatment during his employment with Navajo Refinery and accuses Navajo Refinery of wrongfully terminating him. In fact, the factual allegations of both complaints are nearly identical. (*Compare* Doc. 1 *with* Doc. 18 Ex. E.) Therefore, the facts are clearly related in time, space, origin and motivation. Since the facts alleged are identical, they

13

also form a convenient unit for trial purposes. While the claims are somewhat distinct and therefore would require proof of additional elements, the facts alleged are the same. Finally, again because the facts alleged are identical, the parties should have expected that they would be treated as a unit. For these reasons, I conclude that the causes of action are the same under New Mexico's transactional approach. *See also Strickland*, 130 F.3d at 1412 (quoting *Ford*, 891 P.2d at 554) ("[F]ederal decisions in employment cases have determined under both federal and state law of judgments that where the thrust of both lawsuits is whether the plaintiff was wrongfully discharged, an adverse judgment in the first suit bars the second." ).

Leaton asserts that there was no decision on the merits because the state court relied on the holdings of *Bank of Santa Fe*, 40 P.3d 442, and *14 Penn Plaza LLC v. Pyett*, 556 U.S. 247 (2009). New Mexico courts have defined what is meant by an adjudication on the merits as follows:

> A dismissal with prejudice is an adjudication on the merits only to the extent that when a claim has been dismissed with prejudice, the fourth element of res judicata (a final valid judgment on the merits) will be presumed so as to bar a subsequent suit against the same defendant by the same plaintiff based on the same transaction. If this were otherwise, plaintiffs could simply ignore dismissals and file the same claim as many times as they wished, so long as the claim never progressed to a determination of the substantive issues.

*Kirby*, 231 P.3d at 106. However, despite the general rule that a dismissal with prejudice constitutes an adjudication on the merits, there are a few exceptions where the dismissal with prejudice is based on jurisdictional grounds, such as failure to state a claim or sovereign immunity. *State of N.M. ex rel. Bd. of Cnty. Cmm'rs, San Miguel v. Williams*, 155 P.3d 761, 769 (N.M. Ct. App. 2007); *Macias*, 75 P.3d at 822.

Here, summary judgment was entered by the state court on behalf of Navajo Refinery. Summary judgment is generally considered a final judgment on the merits. *See Maher v. GSI Lumonics, Inc.*, 433 F.3d 123, 127 (1st Cir. 2005) (quoting *AVX Corp. v. Cabot Corp.*, 424 F.3d 28,

34 (1st Cir. 2005)) ("[S]ummary judgment . . . provides the 'traditional basis for the operation of res judicata.'"); *First Pac. Bancorp, Inc. v. Helfer*, 224 F.3d 1117, 1128-29 (9th Cir. 2000); *King v. Hoover Grp., Inc.*, 958 F.2d 219, 222-23 (8th Cir. 1992). Furthermore, summary judgment was granted on the basis of preclusion. It is an established rule that a final decision that a court is precluded from addressing a claim has preclusive effect in any future lawsuits. *In re Brady, Tex., Mun. Gas Corp.*, 936 F.2d 212, 219 (5th Cir. 1991), cert. denied 502 U.S. 1013 (1991); *United States v. Lots 43 through 46*, 935 F.2d 1134, 1138 (10th Cir. 1991); *Haefner v. City of Lancaster, Pa.*, 566 F. Supp. 708, 710-11 (D.C. Pa. 1983). Thus, the New Mexico court's judgment was a final decision on the merits for purposes of *res judicata*.

The policy underlying *res judicata* further supports the conclusion that this federal action is barred by the state court's final decision. Where a plaintiff has multiple claims against a defendant, he is required to join them in the same lawsuit "whenever during the course of the litigation related claims mature and are able to be maintained." *Stone*, 453 F.3d at 1278 (emphasis omitted). "Res judicata bars not only claims that were raised in the prior proceeding, but also claims that could have been raised." *Bank of Santa Fe*, 40 P.3d at 445 (citing *State ex rel. Martinez v. Kerr-McGee Corp.*, 898 P.2d 1256, 1259 (N.M. Ct. App. 1995)). Here, Leaton received the right-to-sue notice for Charge 2 long before the state court reached a final decision.[9] Furthermore, he was not prohibited from joining claims that were not subject to the arbitration in the state district court. *See Mares v. City of Albuquerque*, 173 F.3d 864 (Table), No. 98-2118, 1999 WL 224866, at *3-4

---

[9] Even if he had not received the right-to-sue notice before the state proceedings concluded, Leaton would still likely be precluded from raising these claims in a subsequent lawsuit. *See Wilkes v. Wyo. Dep't of Emp't Div. of Labor Standards*, 314 F.3d 501, 505-06 (10th Cir. 2002) (citations omitted) (agreeing with other circuits and holding that a plaintiff who brings a lawsuit based on wrongful termination but does not yet have a right-to-sue notice from the EEOC should either request the notice and amend the original complaint, request a stay in the original suit, or amend the original complaint once the notice is received).

(10th Cir. Apr. 19, 1999). Thus, Leaton could and should have joined the claims asserted in this federal action with the already pending state action.[10]

Finally, the correctness of the prior final decision on the merits is entirely irrelevant to the issue of claim preclusion. *Federated Dep't Stores v. Moitie*, 452 U.S. 394, 396 (1981) (citations omitted) ("Nor are the res judicata consequences of a final, unappealed judgment on the merits altered by the fact that the judgment may have been wrong or rested on a legal principle subsequently overruled in another case."). In fact, the argument to afford preclusive effect to the outcome of the binding arbitration, which was adopted by the state court, was expressly rejected by this Court. (Doc. 26.) Recently, the Tenth Circuit ruled on this same issue, the preclusive impact of arbitration, and confirmed that this Court's decision was correct. *Mathews*, --- F.3d ----, No. 09-1233, 2011 WL 1901341 (10th Cir. May 17, 2011). Leaton chose not to appeal the state court judgment, and it is well-settled that any error in a prior court judgment does not undermine the preclusive impact of that judgment. *See RecoverEdge L.P. v. Pentecost*, 44 F.3d 1284, 1296 (5th Cir. 1995) (citations omitted).

For the foregoing reasons, I conclude that *res judicata* bars the consideration of the claims raised by Leaton in this federal lawsuit. Thus, this action is precluded by the state court's prior final judgment on the merits, and the entry of summary judgment in favor of Navajo Refinery is appropriate.

## AGE DISCRIMINATION

Even if the state court's judgment did not preclude this lawsuit in its entirety, Leaton has

---

[10] Notably, Navajo Refinery warned Leaton of this likely outcome (Doc. 18 at 7), and Leaton himself recognized that his claims might be barred once one court reached a final decision on the merits (Doc. 21 at 11.)

failed to present sufficient evidence to demonstrate a genuine issue of material fact as to whether Navajo Refinery's asserted reason for his termination was pretextual.[11] Thus, in the alternative, summary judgment would be granted in favor of Navajo Refinery on Leaton's age discrimination claim.

To pursue a claim for relief under the ADEA, the plaintiff must first make out a *prima facie* case of unlawful discrimination. This requires a plaintiff to show that (1) he is a member of the protected class; (2) he was qualified for his position or was performing satisfactory work; (3) he suffered an adverse employment action; and (4) he was replaced by a younger person or was treated less favorably than younger people. *Wilkerson v. Shinseki*, 606 F.3d 1256, 1266 (10th Cir. 2010) (citing *Adamson v. Multi-Cmty. Diversified Servs., Inc.*, 514 F.3d 1136, 1146 (10th Cir. 2008)); *Jones v. Okla. City Pub. Sch.*, 617 F.3d 1273, 1279 (10th Cir. 2010) (quoting *Sanchez v. Denver Pub. Schs.*, 164 F.3d 527, 531 (10th Cir. 1998)). Leaton has stated that the basis for his ADEA claim is that he "was terminated without just cause, and there had to be a reason . . .  and either my disabilities or my age or any other thing, retaliation was the main force behind my termination though." (Doc. 71 Ex. H at 15:8-12.) The evidence that Leaton has relied on to support his claim is limited to his termination and his replacement by a younger man. (*Id.* at 15:20-21.) Navajo Refinery does not dispute that Leaton has made out a *prima facie* case of age discrimination.

Once the *prima facie* case is established, the burden of production shifts to the defendant "to articulate a legitimate, nondiscriminatory reason for its actions." *Wilkerson*, 606 F.3d at 1266 (citation omitted); *see also Jones*, 617 F.3d at 1278. If the defendant offers such a reason for its

---

[11] Navajo Refinery argues that the state court's determination that Leaton was not satisfactorily performing his job duties and that Leaton could not demonstrate pretext are entitled to preclusive effect. (Doc. 71 at 14-15.) However, I need not consider this argument because the facts clearly demonstrate that summary judgment would be warranted without relying on the state court's factual findings.

employment decision, "the presumption of discrimination established by the *prima facie* showing 'simply drops out of the picture.'" *Ingels v. Thiokol Corp.*, 42 F.3d 616, 621 (10th Cir. 1994) (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993)).

Navajo Refinery has articulated such a reason – Leaton was not satisfactorily performing and it was bound to fill the job with Bethke, who happened to be younger than Leaton, because of the CBA.[12] (Doc. 71 at 15-16.) Unsatisfactory work performance is clearly a legitimate business reason for terminating an individual's employment, and Leaton's unsatisfactory performance is well-supported by the record.  *See Smith v. Cashland, Inc.*, 193 F.3d 1158, 1160-61 (10th Cir. 1999); *Ross v. Univ. of Tex. at San Antonio*, 139 F.3d 521, 526-27 (5th Cir. 1998); *Bahl v. Royal Indem. Co.*, 115 F.3d 1283, 1291 (7th Cir. 1997). Leaton admits that Bethke was next in line for a permanent board operator position under the CBA and that Bethke would have been placed in any open board operator position at the time of Leaton's termination. (Doc. 71 Ex. H at 190:25-191:16.) The CBA between Navajo Refinery and the union presents a legitimate business reason for the promotion of Bethke to fill Leaton's position. *See Daubert v. U.S. Postal Serv.*, 733 F.2d 1367, 1370 (10th Cir. 1984) ("USPS's contractual obligations to its employees and their union under the collective bargaining agreement clearly articulates a legitimate business reason for Daubert's discharge.").

Once the defendant advances a nondiscriminatory reason for the employment action, summary judgment is warranted unless the plaintiff "can show there is a genuine issue of material fact as to whether the proffered reasons are pretextual." *Plotke v. White*, 405 F.3d 1092, 1099 (10th Cir. 2005) (citation omitted); *see also Jones*, 617 F.3d at 1278. A plaintiff shows pretext by

---

[12] Navajo Refinery makes much of Leaton's responses and letters in which he indicated that the discrimination he alleged had little to do with age; however, Leaton is not required to assert that age was the only factor causing his termination. Rather, he must allege that age was part of the reason for his termination and that age was a factor that made a difference in the termination decision. *Wilkerson*, 606 F.3d at 1266.

demonstrating "'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence' and hence infer that the employer did not act for the asserted nondiscriminatory reasons." *Swackhammer v. Sprint/United Mgmt. Co.*, 493 F.3d 1160, 1167 (10th Cir. 2007) (quoting *Plotke*, 405 F.3d at 1102).

Methods to prove pretext include, but are not limited to, direct evidence that the employer's proffered reason is false, the employer's differential treatment of the plaintiff from other similarly situated employees who violated comparably serious work rules, and the employer's post-hoc fabrication of the explanation. *Id.* at 1167-68 (citing *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1230 (10th Cir. 2000)); *Asbury v. Geren*, 582 F. Supp. 2d 1323, 1334 (D.N.M. 2008) (citing *Cone v. Longmont United Hosp. Ass'n*, 14 F.3d 526, 530 (10th Cir. 1994)). However, under no circumstances is the plaintiff required to produce any additional evidence of discrimination beyond the *prima facie* case and sufficient evidence to demonstrate that the employer's asserted justification is false. *Jones*, 617 F.3d at 1280.

Leaton attempts to establish pretext by showing that his supervisor treated him differently than he treated Perez and two operators under similar circumstances. To make this argument, he must show that the other employees were similarly situated, or that they have the same supervisor and are subject to the same performance and evaluation standards, and that the employees violated work rules of similar severity. *Swackhammer*, 493 F.3d at 1171 n.11 (quotations and citations omitted). Furthermore, differential treatment alone is insufficient to create an inference of discrimination where the different actions are "trivial or accidental or explained by a nondiscriminatory motive . . . ." *Swackhammer*, 493 F.3d at 1168 (quoting *Kendrick*, 220 F.3d at 1232).

With regard to Perez, I need not determine whether he and Leaton were similarly situated because the two did not violate work rules of similar severity. As the factual background demonstrates, Leaton had an ongoing problem with remaining awake or conscious while in charge of the control board. Furthermore, he was accused of violating a variety of work rules on a number of occasions throughout the nine years of his employment with Navajo Refinery. Leaton was not terminated for the incidents of sleeping. Rather, he was terminated after three incidents within one month in which towers flared while he was in charge of the control board. Viewing the facts in the light most favorable to Leaton and assuming that Perez was asleep and was not disciplined, Leaton and Perez still did not violate work rules of similar severity. Leaton has failed to demonstrate pretext through differential treatment of himself as compared with Perez.

Neither has Leaton made a showing that he and the two outside operators were similarly situated and violated work rules of similar severity. The outside operators, who Leaton claims were responsible for one tower flare while Leaton was operating the control board, and Leaton, who was responsible for monitoring the board, had entirely different responsibilities. Therefore, I cannot presume that they were subject to the same performance and evaluation standards. Even if they were, Leaton's history of work performance issues and the three flaring incidents within the month of October demonstrates that they did not violate work rules of the same severity at the same frequency. Leaton has failed to show pretext by relying on the differential treatment of the two outside operators.

Leaton also contends that the proffered reason for his termination should not be trusted because it is based solely on the affidavit of Boans, the management employee accused of participating in the alleged discrimination. (Doc. 74 at 12.) He asserts that determining whether the asserted reason is valid or pretextual necessarily involves a credibility assessment of Leaton and

Boans and, as such, the issue is not appropriate for summary judgment. (*Id.*)

Contrary to Leaton's assertion, Boans' affidavit is not the sole evidence supporting Navajo Refinery's articulated nondiscriminatory reason for Leaton's termination. Boans' affidavit does state that Leaton's work performance was unsatisfactory and posed a serious safety threat. It is supported by evidence that the towers did in fact flare. Leaton has failed to present evidence that he was treated differently from similarly situated employees; in fact, an affidavit from the Manager of Human Resources indicates that there are no similarly situated employees with a similar record of severe violations. (Doc. 71 Ex. D ("To my knowledge, no other board operator at Navajo Refining has had as many serious performance issues and mishaps as Ellis Leaton had.")). Navajo Refinery has also provided ample evidence as to Leaton's prior work performance issues. Furthermore, as Boans was Leaton's direct supervisor, it is appropriate to consider his affidavit in addition to the other evidence to find that Leaton has failed to demonstrate pretext. *See Swackhammer*, 493 F.3d at 1172.

Leaton relies solely on his subjective belief that he was adequately performing to contradict the evidence of nondiscrimination presented by Navajo Refinery. (*See* Doc. 71 Ex. H at 8-11.) Subjective belief as to the adequacy of performance "fails to give rise to a genuine issue of material fact sufficient to ward off summary judgement." *Asbury*, 582 F. Supp. 2d at 1336 (quoting *MacKenzie v. Denver, City and County of Denver*, 414 F.3d 1266, 1278 (10th Cir. 2005)).

For all of the above stated reasons, Leaton has failed to rebut Navajo Refinery's legitimate, nondiscriminatory reason for his termination. Thus, no genuine issue of material fact exists as to whether Leaton's termination was based on his age, and summary judgment would be appropriate on this count even if Leaton's claims were not barred by *res judicata*.

### RETALIATION

As with Leaton's ADEA claim, if this action were not precluded in its entirety, summary

judgment would be warranted on Leaton's claim of retaliation. Leaton has failed to demonstrate a genuine issue of material fact as to whether he was terminated as a result of retaliation.

A retaliation claim is analyzed under the same burden-shifting framework, requiring a plaintiff to establish a *prima facie* case of retaliation, transposing the burden to the defendant to state a legitimate justification for the employment action, and then returning the burden to the plaintiff to show with sufficient evidence that the justification is pretextual. *Annett v. Univ. of Kan.*, 371 F.3d 1233, 1237 (10th Cir. 2004) (citations omitted). To establish a *prima facie* case, the plaintiff "must show that: (1) [he] engaged in protected activity; (2) the [defendant] took an adverse employment action against [him]; and (3) there exists a causal connection between the protected activity and the adverse action." *Id.* (citation omitted). Protected activity is not limited to formal complaints but also includes informal complaints to superiors about unlawful discrimination. *Somoza v. Univ. of Denver*, 513 F.3d 1206, 1213-14 (10th Cir. 2008) (citation omitted).

As an initial matter, Navajo Refinery asserts that Leaton's retaliation claim may not be raised in this action because he has failed to exhaust administrative remedies. (Doc. 71 at 18.) Exhaustion of remedies is a "jurisdictional prerequisite" to bringing suit pursuant to Title VII. *Jones v. Runyon*, 91 F.3d 1398, 1399 (10th Cir. 1996) (citation omitted). Tenth Circuit precedent makes clear that each discrete discriminatory or retaliatory action constitutes it own adverse employment action "for which administrative remedies must be exhausted . . . ." *Annett*, 371 F.3d at 1238 (quoting *Martinez v. Potter*, 347 F.3d 1208, 1210 (10th Cir. 2003)). A court, then, must look to the facts concerning the retaliatory actions alleged in the claim to determine whether each discrete incident was exhausted. *Jones v. U.P.S., Inc.*, 502 F.3d 1176, 1186 (10th Cir. 2007). Where an action is not exhausted, the court lacks subject matter jurisdiction over the claim and it must be dismissed without prejudice. *Rodriguez v. Miller Waste Mills, Inc.*, 72 F. App'x 839, 846 (10th Cir. 2003)

22

(unpublished).

In Charge 2, Leaton asserted that he was terminated in retaliation for filing Charge 1. (Doc. 71 Ex. L.) In his complaint and subsequent pleadings, Leaton claims that he engaged in several instances of protected conduct in addition to filing Charge 1.[13] (Doc. 1 at 6; Doc. 74 at 10.) The alleged protected conduct includes reports of disparate treatment and discrimination to the union, Navajo Refinery's management and attorney, and the EEOC. (*Id.*) The reports of disparate treatment involved other employees who were sleeping on the job but not disciplined. (Doc. 1 at 3.) However, as with his EEOC complaint, the sole adverse employment action underlying Leaton's claim of retaliation is his termination. (*Id.* at 6.) Because he raised that retaliatory action in Charge 2, Leaton successfully exhausted his claim of retaliation.[14]

Unlike with Leaton's discrimination claim, Navajo Refinery disputes that Leaton has stated a *prima facie* case with respect to his retaliation claim. It argues that Leaton has not claimed conduct that is statutorily protected and has failed to submit sufficient evidence to demonstrate a causal connection between the alleged protected activity and his termination. (Doc. 71 at 17.) In the alternative, it argues that Leaton has failed to rebut Navajo Refinery's legitimate business reason for Leaton's termination. (*Id.* at 17-18.)

---

[13] Notably, Leaton failed to allege some of these factual claims in his complaint. Specifically, Leaton did not mention the union grievance and the union report. A plaintiff is required to provide a short and plain statement of his claim showing his entitlement to relief in his complaint. *Ashcroft v. Iqbal*, --- U.S. ---, 129 S. Ct. 1937, 1949 (2009) (citations omitted). This includes the specific facts touching on the claims, though technical accuracy is not required. *See Blinder, Robinson & Co., Inc. v. U.S. S.E.C.*, 748 F.2d 1415, 1419 (10th Cir. 1984). However, Navajo Refinery has not raised this issue, and consideration of these two claims does not alter the result.

[14] Leaton makes arguments in his Response regarding a hostile work environment, citing to *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (1999) and *Davidson v. Am. Online, Inc.*, 337 F.3d 1179 (10th Cir. 2003), to argue that his complaints were timely filed. (Doc. 74 at 11.) The timeliness of his EEOC, state court, and federal court complaints are not at issue, and so I need not consider this new legal theory.

Assuming without deciding that Leaton has stated a *prima facie* case of retaliation, he has failed to rebut Navajo Refinery's proffered reason for his termination. Navajo Refinery asserts that Leaton was terminated for poor performance. As described above, Leaton has failed to meet his burden to demonstrate that this asserted reason is pretextual. *See supra*, pp. 19-21. Leaton relies on the same arguments to demonstrate pretext as to both his ADEA and retaliation claims, and his arguments fail to establish a genuine issue of material fact. Accordingly, the entry of summary judgment as to Leaton's claim of retaliation would be appropriate.

CONCLUSION

For the foregoing reasons, I order that Navajo Refinery's Motion for Summary Judgment (Doc. 71) is granted in its entirety and that Leaton's Complaint (Doc. 1) is dismissed with prejudice.

IT IS SO ORDERED.


_William P. Lynch_
William P. Lynch
United States Magistrate Judge


A true copy of this order was served
on the date of entry--via mail or electronic
means--to counsel of record and any *pro se*
party as they are shown on the Court's docket.                    24